**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| WESTERNGECO L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-cv-03118 |
| | ) | |
| MULTI KLIENT INVEST AS, | ) | JURY TRIAL DEMANDED |
| PETROLEUM GEO-SERVICES, INC., | ) | |
| and PGS GEOPHYSICAL AS | ) | |
| | ) | |
| Defendants. | ) | |

## PGS'S MOTION TO DISMISS WESTERNGECO'S
## <u>FIRST AMENDED COMPLAINT</u>

*Of Counsel:*

Benjamin Hattenbach
Ellisen Turner
Arka Chatterjee
Dominik Slusarczyk
IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067
Tel.: 310-277-1010
Fax: 310-203-7199

David Beck
    State Bar No. 00000070
    Federal Bar No. 919
    dbeck@beckredden.com
BECK REDDEN LLP
1221 McKinney
Suite 4500
Houston, TX 77010
Tel.: 713-951-3700
Fax: 713-951-3720

# TABLE OF CONTENTS

Page

1. INTRODUCTION ..................................................................................... 1

2. NATURE AND STAGE OF THE PROCEEDING .................................. 1

3. STATEMENT OF THE ISSUES AND LEGAL STANDARD ............... 1

4. THE PATENTS-IN-SUIT .......................................................................... 2

5. PROCEDURAL HISTORY ....................................................................... 4

    a.    Many Of The Patents At Issue Here Have Been Asserted In Prior And Co-Pending Litigation ................................................................ 5

    b.    WesternGeco's New Allegations Of Direct Infringement Are Based Entirely Upon Accused Activities That Occur Outside U.S. Territory .................................................................................... 5

    c.    WesternGeco Alleges Conditional Infringement Under § 271(g) Of The Streamer Positioning Patents, None Of Which Contain Manufacturing Process Claims ...................................................... 6

    d.    WesternGeco's Allegations Of Infringement Under § 271(f) Include Patents That Contain Only Method Claims ..................................... 7

6. SUMMARY OF ARGUMENT ................................................................. 7

    a.    WesternGeco's Direct And Indirect Infringement Allegations, All Of Which Are Based Upon Alleged PGS Survey Activities Occurring Outside U.S. Territory, Should Be Dismissed ............................. 7

    b.    WesternGeco's § 271(g) Allegations As To Its Streamer Positioning Patents Should Be Dismissed Because None Of Those Patents Claim Manufacturing Methods For Importable Products ................. 8

    c.    WesternGeco's § 271(f) Allegations As To Patents Claiming Only Methods Should Be Dismissed, Since § 271(f) Does Not Apply To Methods ...................................................................................... 9

7. ARGUMENT .............................................................................................. 9

    a.    WesternGeco's Direct and Indirect Infringement Claims Based on Making or Using the Patented Invention of the Asserted Patents in the EEZ Should Be Dismissed ............................................................. 9

i)     Jurisdictional Limitations of U.S. Patent Law Preclude Direct Infringement by Surveys Conducted In The EEZ ................ 10

ii)    WesternGeco's Indirect Infringement Claims Fail For Lack Of Underlying Direct Infringement .................................................. 15

iii)   Issue Preclusion Bars WesternGeco's Infringement Allegations Against Marine Surveys Conducted In The EEZ ................................................................................................. 15

b.    WesternGeco's Infringement Claims Under § 271(g) Should Be Dismissed For Each of the Streamer Positioning Patents .......................... 17

i)     PGS Cannot Infringe The '223 Patent Under § 271(g) Because The '223 Patent Contains No Method Claims .................. 17

ii)    The Overlapping Patents And The '552 Patent Are Directed To Streamer Positioning, Not Manufacture Of A Physical Product .......................................................................................... 18

c.    WesternGeco's Allegations That PGS Infringes The '552 and '944 Patents Under § 271(f) Fail As A Matter Of Law. ...................................... 20

8.    CONCLUSION ........................................................................................................ 20

**Cases**

*Advanced Analogic Techs., Inc. v. Kinetic Techs., Inc.*,
No. C-09-1360, 2009 U.S. Dist. LEXIS 57953 (N.D. Cal. 2009) ............................ 13

*Aslani v. Sparrow Health Sys.*,
No. 1:08-CV-298, 2009 WL 736654 (W.D. Mich. Mar. 12, 2009) ........................... 4

*Baker v. Universal Die Casting, Inc.*,
725 F. Supp. 416 (W.D. Ark. 1989) ............................................................. 4

*Bayer AG v. Housey Pharm., Inc.*,
340 F.3d 1367 (Fed. Cir. 2003) .................................................................. 18

Beaulieu v. Bd. of Trs. of Univ. of West Fla.,
No. 3:07cv30/RV/EMT, 2007 WL 2020161 (N.D. Fla. July 9, 2007) ....................... 4

*Brocksopp Eng'g, Inc. v. Bach–Simpson Ltd.*,
136 F.R.D. 485 (E.D. Wis. 1991) ................................................................ 4

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
576 F.3d 1348 (Fed. Cir. 2009) ............................................................. 9, 20

*Circuit City Stores v. Citgo Petroleum Corp.*,
No. 92-CV-7394, 1994 U.S. Dist. LEXIS 12634 (E.D. Pa. Sept. 7, 1994) ................. 4

*Compton v. City of Harrodsburg, Ky.*,
287 F.R.D. 401 (E.D. Ky. 2012)................................................................. 4

*DSU Med. Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006) ................................................................. 15

*Gerlach v. Michigan Bell Tel. Co.*,
448 F. Supp. 1168 (E.D. Mich. 1978) .......................................................... 4

*Godlewski v. Affiliated Computer Serv., Inc.*
210 F.R.D. 571 (E.D. Va. 2002) ................................................................. 4

*Ideal Instruments, Inc. v. Rivard Instruments, Inc.*,
434 F. Supp. 2d 598 (N.D. Iowa 2006) ........................................................ 4

*In re Freeman*,
30 F.3d 1459 (Fed. Cir. 1994) ................................................................... 16

*Joy Techs., Inc. v. Flakt, Inc.*,
6 F.3d 770 (Fed. Cir. 1993) ...................................................................... 15

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
134 S. Ct. 2111 (2014) ............................................................................. 15

*Litecubes, LLC v. Northern Light Prods., Inc.*,
523 F.3d 1353 (Fed. Cir. 2008) ............................................................... 11

*Microsoft Corp. v. AT&T Corp.*,
550 U.S. 437 (2007) ................................................................................. 11

*NTP, Inc. v. Research in Motion, Ltd.*,
418 F.3d 1282 (Fed. Cir. 2005) ...................................................... 11, 18, 19

*Spector v. Norwegian Cruise Line, Ltd.*,
No. H-00-2649, 2002 U.S. Dist. LEXIS 28074 (S.D. Tex. Sept. 9, 2002) ............... 12

*Test Masters Educ. Servs., Inc. v. Singh*,
428 F.3d 559 (5th Cir. 2005) ..................................................................... 2

*United States v. Matute*,
No. 06-20596, 2013 WL 6384610 (S.D. Fla. Aug. 20, 2013) ................................... 14

*United States v. Shanbaum*,
10 F.3d 305 (5th Cir. 1994) ...................................................................... 16

*WesternGeco LLC v. Ion Geophysical Corp.*,
776 F. Supp. 2d 342 (S.D. Tex. 2011) ............................................. passim

## Statutes

35 U.S.C. § 271 .......................................................................... passim

## Other Authorities

18 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE &
PROCEDURE (2d ed.) ("WRIGHT & MILLER") § 4416 ................................. 15

## Rules

Fed. R. Civ. P. 12 ........................................................................ passim

## 1.     INTRODUCTION

Defendants Petroleum Geo-Services, Inc. ("PGS Inc."), PGS Geophysical AS ("PGS AS"), and Multi Klient Invest AS ("MultiKlient") (collectively "PGS") respectfully move pursuant to Fed. R. Civ. P. 12 to dismiss portions of WesternGeco L.L.C.'s ("WesternGeco") first amended complaint for failure to state a claim for patent infringement.  As detailed below, there are three independent grounds warranting such dismissal.

## 2.     NATURE AND STAGE OF THE PROCEEDING

WesternGeco filed its original complaint in this case on October 31, 2014. D.I. 1.  On January 23, 2015, WesternGeco amended its complaint to assert infringement of five additional patents.  D.I. 15.  The Court has scheduled the initial pre-trial conference for April 21, 2015.  D.I. 41.

## 3.     STATEMENT OF THE ISSUES AND LEGAL STANDARD

1.     The complaint accuses PGS activities that allegedly occur in the Economic Exclusivity Zone ("EEZ") beyond the U.S. territorial sea – an area that is not subject to U.S. Patent laws.  Should WesternGeco's claims under 35 U.S.C. § 271(a) for direct infringement based on such extraterritorial activity be dismissed, just as they were in WesternGeco's prior litigation against ION?

2.     WesternGeco asserts infringement under 35 U.S.C. § 271(g), which creates liability exclusively for those who import a product manufactured by a patented process.  Should WesternGeco's § 271(g) claims be dismissed for the patents that do not claim any manufacturing process?

3. WesternGeco asserts infringement under 35 U.S.C. § 271(f), which the Federal Circuit has confirmed does not apply to method claims. Should WesternGeco's § 271(f) claims be dismissed as to the patents that contain only method claims?

A court may dismiss all or part of a complaint where the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the district court must accept as true well-pleaded factual allegations in the complaint. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005). If, based on those assumed facts, "it appears certain that the plaintiff cannot prove any set of facts that would entitle it to the relief it seeks, dismissal is proper." *Id.* (citation omitted).

### 4. <u>**THE PATENTS-IN-SUIT**</u>

WesternGeco's asserted patents relate generally to marine seismic surveying. *See* D.I. 15, Exhibits A-G. Three of these patents, along with all of the underlying seismic technologies at issue in this case, are also being litigated in a related matter before Judge Lynn N. Hughes (Civil Action No. 4:13-cv-02725, or "First-Filed Case"). *See* D.I. 46.

To perform marine seismic surveys, seagoing vessels tow one or more streamers, which are cables that may be several miles long. *See, e.g.*, U.S. Patent No. 7,080,607, D.I. 15 Ex. G at Col. 1: 20-22. During the survey, seismic sources (typically airguns) send acoustic pulses down through the water into the earth beneath. *See, e.g.*, *id.* at Col. 1: 28-29. As these pulses reflect off the various strata

in the earth's subsurface geology, sensors located on the towed streamers record these reflections. *See, e.g.*, *id.* at Col. 1: 23-24; 29-30. This collected reflection data may later be digitized and processed to build up a representation of the subsurface geology, using a variety of processes and techniques not covered by WesternGeco's asserted patents. *Id.* at Col. 1: 31-33.

WesternGeco's asserted patents relate to different aspects of performing seismic surveys. U.S. Patent Nos. 7,080,607 ("'607 Patent"), 7,162,967 ("'967 Patent"), 7,293,520 ("'520 Patent"), 7,822,552 ("'552 Patent"), and 6,671,223 ("'223 Patent") (collectively, the "Streamer Positioning Patents") concern technologies used to manage the vertical or horizontal position of the streamers as they are towed through the water. The '607 patent, for example, uses streamer positioning devices ("SPDs") to change the position of the streamer to which they are attached. '607 Patent, D.I. 15 Ex. G at Col. 2 ll. 61-64. The '967 Patent addresses SPDs with a wing whose orientation is adjustable via a wing motor. '967 Patent, D.I. 15 Ex. H at Col. 3 ll. 6-10. The '552 and '223 Patents address a streamer "control device" that is mounted in series between two sections of a continuous streamer. *See, e.g.*, '552 Patent, D.I. 15 Ex. E at Col. 2: 20-22; '223 Patent, D.I. 15 Ex. C at Col. 2: 8-10.

The U.S. Patent Nos. 5,924,049 ("'049 Patent") and 6,545,944 ("'944 Patent") concern the acquisition and processing of seismic survey data from multiple seismic sources activated at or near the same time. *See* '049 Patent, D.I. 15 Ex. A, at abstract; '944 Patent, D.I. 15 Ex. B at abstract.

## 5.  <u>PROCEDURAL HISTORY</u>

WesternGeco filed its complaint on October 31, 2014, alleging that PGS infringed the '049 and '944 Patents.  Nearly three months later, on January 23, 2015, WesternGeco amended its complaint to add the five Streamer Positioning Patents.[1]

---

[1] This motion to dismiss WesternGeco's infringement claims suspends the time for PGS to answer the remaining allegations in WesternGeco's amended complaint. *See, e.g., Brocksopp Eng'g, Inc. v. Bach–Simpson Ltd.*, 136 F.R.D. 485, 486 (E.D. Wis. 1991) (finding that "a partial 12(b) motion enlarges the time to file an answer."); *Baker v. Universal Die Casting, Inc.*, 725 F. Supp. 416, 420 (W.D. Ark. 1989) (finding that "any motion to dismiss based upon the defenses listed in Rule 12(b)(1) [or] (6) results in the responsive pleadings not becoming due until ten days after notice of the court's action."); *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 434 F. Supp. 2d 598, 639 (N.D. Iowa 2006) ("[A] motion pursuant to Rule 12(b), even one that challenges less than all of the claims asserted in the complaint or other pleading, extends the time to answer as to all claims in the pleading."); *Godlewski v. Affiliated Computer Serv., Inc.*, 210 F.R.D. 571, 572 (E.D. Va. 2002) ("A majority of courts . . . hold that the filing of a motion that only addresses part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion."); *Circuit City Stores v. Citgo Petroleum Corp.*, No. 92-CV-7394, 1994 U.S. Dist. LEXIS 12634, at *13 (E.D. Pa. Sept. 7, 1994) ("A partial 12(b) motion enlarges the time to file an answer."); *Aslani v. Sparrow Health Sys.*, No. 1:08-CV-298, 2009 WL 736654, at *4 n. 10 (W.D. Mich. Mar. 12, 2009) ("As noted below, the Lansing Defendants' renewed motion to dismiss the amended complaint does not seek dismissal [of certain counts]. But this fact does not obligate the Lansing Defendants to file an answer to those claims which it has not moved to dismiss."); *Beaulieu v. Bd. of Trs. of Univ. of West Fla.,* No. 3:07cv30/RV/EMT, 2007 WL 2020161, *2 (N.D. Fla. July 9, 2007) ("The majority of courts considering this question have concluded that a party need not file an answer while a partial motion to dismiss is pending.").  One oft-criticized decision outside this district instructed a defendant to file a partial answer within 10 days in response to a potentially faulty complaint, despite the defendants' pending motion to dismiss.  *Gerlach v. Michigan Bell Tel. Co.*, 448 F. Supp. 1168, 1174 (E.D. Mich. 1978); *see also Compton v. City of Harrodsburg, Ky.,* 287 F.R.D. 401, 402 (E.D. Ky. 2012) ("However, the *Gerlach* opinion, which notably did not cite any authority for its ruling, stands alone like an Appaloosa in a herd of Thoroughbreds, and this Court declines to follow its lead").  Should this Court adopt *Gerlach's* minority view, PGS will file a partial answer on the date that the Court instructs.

### a. Many Of The Patents At Issue Here Have Been Asserted In Prior And Co-Pending Litigation

The '607, '520, and '967 Patents (collectively, the "Overlapping Patents") have been asserted in several prior litigations within this district, including the First-Filed Case before Judge Hughes, and in cases against ION Geophysical Corporation, Fugro GeoTeam, and Polarcus Inc. Ex. 1; Ex. 2; Ex. 3.

### b. WesternGeco's New Allegations Of Direct Infringement Are Based Entirely Upon Accused Activities That Occur Outside U.S. Territory

WesternGeco's First Amended Complaint accuses PGS of making and using the claimed invention of the Patents-in-Suit solely through alleged survey activity conducted in the EEZ, which is located beyond U.S. territorial waters. For example, WesternGeco alleges that PGS "has performed marine seismic surveys using products and methods that infringe WesternGeco's Patents-in-Suit within the United States Exclusive Economic Zone" and accuses PGS "surveys [performed] within the Gulf of Mexico and EEZ." D.I. 15 at ¶¶ 13, 28. WesternGeco's First Amended Complaint also accuses "the Triton survey(s)" of infringement and alleges that this infringement took place "within the Gulf of Mexico and EEZ," and references maps indicating that these surveys took place within "the Garden Banks and Keathley Canyon" regions. *Id.* ¶ 30. WesternGeco alleges that this survey activity, which according to WesternGeco's own allegations occurs exclusively in the EEZ far beyond U.S. territorial waters, directly infringes each of its asserted U.S. patents.

Based on those allegations, WesternGeco asserts infringement claims under 35 U.S.C. § 271(a), (b), and (c).  D.I. 15 at ¶¶ 36-38, 44-46, 52-54, 60-62, 68-70, 76-78, and 84-86.  As discussed below, such claims should be rejected as a matter of law.

### c. WesternGeco Alleges Conditional Infringement Under § 271(g) Of The Streamer Positioning Patents, None Of Which Contain Manufacturing Process Claims

WesternGeco also ***conditionally*** alleges that PGS violates 35 U.S.C. § 271(g) with respect to each Patent-in-Suit.  *Id.*  WesternGeco added allegations of infringement under § 271(g) in its first amended complaint in the First-Filed Case, and in the present case,[2] using the following ***conditional*** language:

> PGS has alleged ***in other proceedings*** [i.e., the First-Filed Case], that data products, including potentially large volumes of recorded seismic data are covered by § 271(g).  ***To the extent PGS is correct***, its importation of seismic data and products generated by the patented methods infringe under § 271(g).

*See* D.I. 15 at ¶¶ 38, 46, 54, 62, 70, 78, 86.  *See also, e.g.,* Ex. 4 at 25 ("Geo Inc. previously argued that the importation of seismic data can infringe a United States patent under 35 U.S.C. § 271(g).  ***To the extent Geo Inc. is correct***, [the accused defendants] infringe under this provision as well.") (emphasis added).  As discussed below, these assertions fail to state a proper claim for relief.  This is particularly true for the asserted patents that do not include claims covering manufacturing processes for importable products, which are the only types of claims that § 271(g) can address.

---

[2] Notably, WesternGeco asserted the Overlapping Patents in multiple prior litigations involving foreign defendants and foreign surveys and yet has never before alleged that any of these patents were, or even could be, infringed under § 271(g).

#### d. WesternGeco's Allegations Of Infringement Under § 271(f) Include Patents That Contain Only Method Claims

WesternGeco also alleges, without explanation, that PGS violates § 271(f) with respect to each Patent-in-Suit, including the '552 and '944 Patents, both of which contain only method claims. *Id.* As discussed below, the law excludes method claims from the scope of § 271(f).

### 6. SUMMARY OF ARGUMENT

#### a. WesternGeco's Direct And Indirect Infringement Allegations, All Of Which Are Based Upon Alleged PGS Survey Activities Occurring Outside U.S. Territory, Should Be Dismissed

WesternGeco asserts that performing seismic surveys in the U.S. Economic Exclusivity Zone directly infringes its patents under § 271(a). That assertion fails for two separate reasons. *First*, WesternGeco has advanced this view before in prior litigation against ION and Fugro concerning many of the same patents, and the Court rejected it. There, the Court held that the Presidential proclamation establishing the EEZ describes the EEZ as a region outside the territory of the United States, and therefore outside the reach of the U.S. patent laws.[3] Under the doctrine of collateral estoppel, WesternGeco is bound by that ruling. *Second*, even if one were to put aside

---

[3] The Court noted that installations affixed to the seabed of the Outer Continental Shelf (OCS) may be subject to the substantive laws of the United States, but also held that this result does not apply "to vessels traversing the seas above the [Outer Continental Shelf] for purposes of conducting seismic exploration, and that are neither permanently nor temporarily attached to the seabed." *WesternGeco LLC v. Ion Geophysical Corp.*, 776 F. Supp. 2d 342, 371 (S.D. Tex. 2011) ("*ION* Decision). Thus, even to the extent the OCS is coterminous with portions of the EEZ, that is irrelevant to the present motion because WesternGeco has not accused any activities that involve hardware affixed to the seafloor. Instead, WesternGeco alleges that a survey involving seagoing vessels directly infringes its patents.

the issue of collateral estoppel, WesternGeco's infringement assertions still impermissibly seek to extend the U.S. patent law beyond the territory of the United States. **All** of WesternGeco's direct infringement allegations are based entirely on a single survey PGS allegedly performed in the EEZ, beyond U.S. territorial waters. Hence, all of WesternGeco's direct infringement allegations should be dismissed as a matter of law.

Further, WesternGeco's allegations of indirect infringement under 35 U.S.C. §§ 271(b) and (c) are all predicated on WesternGeco's allegations of direct liability for activities undertaken exclusively in the EEZ. Hence, they too should be dismissed.

> **b. WesternGeco's § 271(g) Allegations As To Its Streamer Positioning Patents Should Be Dismissed Because None Of Those Patents Claim Manufacturing Methods For Importable Products**

WesternGeco also conditionally alleges that PGS infringes each of WesternGeco's five Streamer Positioning Patents under 35 U.S.C. § 271(g). WesternGeco frames its § 271(g) allegations as being dependent upon the extent to which PGS's own § 271(g) counterclaims in the First-Filed Case are "correct." But PGS's asserted patents in the First-Filed Case yield a different result because they include the very types of manufacturing process claims that § 271(g) addresses and that WesternGeco's patents lack. Here, none of WesternGeco's Streamer Positioning Patents claim a manufacturing process for a product that can be sold, used, or imported into the United States in a manner that would infringe § 271(g). Indeed, one of them (the '223 Patent) does not claim **any** methods or processes at all. For

these reasons, WesternGeco's allegations that PGS infringes its Streamer Positioning Patents under 35 U.S.C. § 271(g) should be dismissed as a matter of law.

      **c.**      **WesternGeco's § 271(f) Allegations As To Patents Claiming Only Methods Should Be Dismissed, Since § 271(f) Does Not Apply To Methods**

WesternGeco also makes unexplained and conclusory allegations that PGS infringes the '552 and '944 Patents under § 271(f). These claims necessarily fail because these patents contain ***only*** method claims, and § 271(f) does not apply to method claims. *See, e.g.*, *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1365 (Fed. Cir. 2009) (reversing prior decisions that held that "that Section 271(f) applies to method patents."). Hence, WesternGeco's § 271(f) claims as to those patents should be dismissed as a matter of law.

      **7.**      <u>**ARGUMENT**</u>

      **a.**      **WesternGeco's Direct and Indirect Infringement Claims Based on Making or Using the Patented Invention of the Asserted Patents in the EEZ Should Be Dismissed**

In order to infringe under the "make" or "use" prongs of § 271(a), the accused activity must itself have been undertaken within the territory of the United States. *See, e.g.,* 35 U.S.C. § 271(a). WesternGeco's Complaint does ***not*** allege that PGS performed marine seismic surveys within the United States. Instead, WesternGeco contends that survey activities taking place in the EEZ, which extends 200 miles off the coast of the United States and excludes the U.S. territorial sea,[4] infringe its patents under § 271(a). In particular, WesternGeco bases its infringement allegations

---

[4] The territorial sea of the United States extends 12 miles from the terrestrial coast of the United States. *WesternGeco*, 776 F. Supp. 2d at 366.

on an assertion that PGS's Triton FAZ survey was performed in the Gulf of Mexico within the EEZ.  D.I. 15 at ¶¶ 36-38, 44-46, 52-54, 60-62, 68-70, 76-78, and 84-86; *see also* D.I. 1 at ¶¶ 13, 28, 30.  The survey is alleged to have taken place "within the EEZ," in the "Garden Banks and Keathley Canyon" regions, many miles beyond the U.S. territorial sea.  D.I. 15 at ¶¶ 37, 30.

As discussed below, the EEZ is ***not*** within the territory of the United States for the purposes of enforcing WesternGeco's U.S. patents.  Thus, WesternGeco's § 271(a) claims fail because they contradict the plain meaning of the patent statute and presidential proclamation creating the EEZ, and violate the presumption against the extraterritorial application of U.S. Patent law.

WesternGeco tried arguing the contrary in prior litigation involving many of these very same patents, and lost.  *WesternGeco*, 776 F. Supp. 2d at 366.  The *ION* Decision, through the doctrine of collateral estoppel, binds WesternGeco and independently vitiates its § 271(a) allegations.

Furthermore, WesternGeco's indirect infringement allegations under §§ 271(b) and (c), which require an underlying act of direct infringement under § 271(a), should also be dismissed because none of the accused extraterritorial activities could possibly directly infringe a United States patent.

> **i)     Jurisdictional Limitations of U.S. Patent Law Preclude Direct Infringement by Surveys Conducted In The EEZ**

PGS's alleged activities in the EEZ do not occur "within the United States" for the purposes of 35 U.S.C. § 271(a), and therefore cannot infringe WesternGeco's U.S.

Patents. Direct infringement of U.S. Patents can only occur within the territory of the United States. *Litecubes, LLC v. Northern Light Prods., Inc.*, 523 F.3d 1353, 1366 (Fed. Cir. 2008) ("[W]e hold that whether the allegedly infringing act happened in the United States is an element of [a] claim for patent infringement . . . ."); *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1313 (Fed. Cir. 2005) ("[A] process cannot be used 'within' the United States as required by § 271(a) unless each of the steps is performed within this country."). Indeed, the Supreme Court has repeatedly affirmed the territorial limits of U.S patent laws: "The presumption that United States law governs domestically but does not rule the world applies with particular force in patent law." *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454-55 (2007).

Here, the only PGS activities that WesternGeco alleges infringe its patents under § 271(a) were, according to WesternGeco's own allegations, performed in connection with a survey that occurred far into the Gulf of Mexico, entirely "within the EEZ" and many miles outside of U.S. territorial waters. D.I. 15 at ¶ 37, 45, 53, 61, 69, 77, 85. The First Amended Complaint is unambiguous about the location of the accused activities, and an examination of the material referenced therein removes any remaining doubt. For example, WesternGeco alleges that "PGS, including but not limited to Multi Klient, has applied for multiple BOEM permits that correspond to seismic surveying activity that was part of" the Triton survey. D.I. 15 at ¶ 30. The referenced permit application, attached here as Exhibit 5,[5] shows that the Triton

---

[5] Despite expressly referencing this permit application in its pleadings, WesternGeco elected not to include it with the First Amended Complaint, presumably because the application clearly shows that WesternGeco is accusing

survey area is located nearly a hundred miles away from the nearest point of the United States coast.  *See* Ex. 5, p. 6 at *3, *5 (demonstrating through a polygon superimposed on a map of the Gulf of New Mexico the "generalized proposed location of the [prospective] survey activity" that the survey area is 160 kilometers offshore Galveston, TX).  For reasons described below, these regions lie beyond U.S. territorial waters.  As such, WesternGeco's infringement allegations would require an impermissible extension of U.S. patent laws beyond the territory of the United States.

The EEZ, which includes waters extending up to 200 nautical miles from the terrestrial coast, was created by presidential decree on March 10, 1983:

> The Exclusive Economic Zone of the United States is a zone **contiguous to the territorial sea**, . . . of the United States, . . . and United States overseas territories and possessions. ***The Exclusive Economic Zone extends to a distance 200 nautical miles from the baseline from which the breadth of the territorial sea is measured***.
>
> &ast; &ast; &ast;
>
> Within the Exclusive Economic Zone, the United States has, to the extent permitted by international law, (a) sovereign rights for the purpose of exploring, exploiting, conserving and managing natural resources, both living and non-living, of the seabed and subsoil and the superjacent waters and with regard to other activities for the economic exploitation and exploration of the zone, such as

_____

extraterritorial activities.  Nevertheless, the Court may consider this document to inform its analysis of WesternGeco's allegations because it is expressly referenced in the First Amended Complaint.  The Court may also take judicial notice of the document, which is publicly available from the Bureau of Safety and Environmental Enforcement.  *See Spector v. Norwegian Cruise Line, Ltd.*, No. H-00-2649, 2002 U.S. Dist. LEXIS 28074 at *3 n.1 (S.D. Tex. Sept. 9, 2002) (finding that courts may take judicial notice of "matter[s] of public record" and that such notice does not convert a Rule 12(b)(6) motion into a motion for summary judgment);*see also* BSEE, Public Information Query for G&G, https://www.data.bsee.gov/homepg/data_center/other/WebStore/pimaster.asp?appid=5 (providing an online search for such permit applications, among other kinds of documents).

> the production of energy from the water, currents and winds; and
> (b) jurisdiction with regard to the establishment and use of artificial
> islands, and installations and structures having economic purposes,
> and the protection and preservation of the marine environment.

Ex. 6, Proclamation No. 5030, 48 fed. Reg. 10605 (March 14, 1983) (emphasis added).

The proclamation does not extend the territorial boundaries of the United States, and

expressly distinguishes the EEZ from the territorial sea of the United States. *Id.*

Indeed, the proclamation explicitly confirms:

> Without prejudice to the sovereign rights and jurisdiction of
> the United States, the Exclusive Economic Zone ***remains an area
> beyond the territory and territorial sea of the United States in
> which all States enjoy the high seas freedoms*** of navigation,
> overflight, the laying of submarine cables and pipelines, and other
> internationally lawful uses of the sea.

*Id.* (emphasis added). Because the EEZ by definition remains beyond U.S. territory,

WesternGeco's allegations that surveys conducted in the EEZ could infringe U.S.

patents fail as a matter of law. *Advanced Analogic Techs., Inc. v. Kinetic Techs.,

Inc.*, No. C-09-1360, 2009 U.S. Dist. LEXIS 57953 at *3 (N.D. Cal. July 8, 2009)

("To the extent KTI seeks dismissal of the complaint for failure to allege infringing

activity by KTI within the United States, the motion [Rule 12(b)(6)] will be granted .

. . ."); *WesternGeco*, 776 F. Supp. 2d at 370 ("Thus, we find that the Fugro Norway

Defendants' activities in the EEZ do not occur within the territory of the United

States for purposes of U.S. patent law.").

Indeed, as noted above, WesternGeco's position has already been rejected in

this district. After full briefing on the matter, Judge Ellison concluded that the EEZ

is not "within the United States" for purposes of enforcing U.S. patents.

*WesternGeco*, 776 F. Supp. 2d at 370 (marine surveying "activities in the EEZ do not occur with the territory of the United States for the purposes of U.S. patent law"). Judge Ellison reached this conclusion because the EEZ (1) remains beyond the territory and territorial sea of the United States;" (2) "Customary international law and [the] UNCLOS [treaty] reaffirm the principle that a country's EEZ retains its character as outside the territory of that country and largely maintains its status as high seas;" (3) U.S. jurisdiction in the EEZ is limited and "circumscribed"; (4) Congress has not enacted legislation to extend U.S. patent law to cover activities occurring in the EEZ; and (5) extending U.S. patent laws to the EEZ contravenes the well-established presumption against extraterritoriality of the patent laws. *Id.* at 364-72; *see also United States v. Matute*, No. 06-20596, 2013 WL 6384610, at *5-6 (S.D. Fla. Aug. 20, 2013) (customary international law limits each country's territorial waters to 12 nautical miles from the coast, nations do not "enjoy sovereignty [in the EEZ] for 200 miles from their coast," and acts committed in the EEZ are generally treated as occurring on the "high seas" and in "international waters").

Furthermore, extending U.S. patent laws to marine surveys conducted in the EEZ in the Gulf of Mexico would contravene the presumption that "the character of the waters above the Outer Continental Shelf as high seas . . . shall not be affected" by the exercise of U.S. jurisdiction for regulatory and permitting authority for the exploitation of minerals. *WesternGeco*, 776 F. Supp. 2d at 370. Thus, the conduct accused here that occurs in the EEZ cannot constitute direct infringement of a U.S. patent.

### ii) WesternGeco's Indirect Infringement Claims Fail For Lack Of Underlying Direct Infringement

The failure of WesternGeco's direct infringement claims necessarily eliminates its indirect infringement claims under §§ 271(b) and (c). "Liability for either active inducement of infringement or contributory infringement is dependent upon the existence of direct infringement." *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117-20 (2014); *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993). The predicate acts of direct infringement must occur in the United States. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006) ("Upon review of the record, this court perceives, as well, an absence of evidence of direct infringement to which ITL contributed *in* the United States."). Because marine surveys conducted by PGS in the EEZ cannot constitute direct infringement of a U.S. patent as a matter of law, WesternGeco's infringement allegations under §§ 271(b) and (c) should also be dismissed.

### iii) Issue Preclusion Bars WesternGeco's Infringement Allegations Against Marine Surveys Conducted In The EEZ

Issue preclusion prevents WesternGeco from re-litigating whether marine seismic surveys performed in the EEZ can constitute direct infringement "within the United States." Issue preclusion, or collateral estoppel, requires that "later courts should honor the first actual decision of a matter that has been actually litigated." 18 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 4416 (2d ed. 2014). A plaintiff may not re-litigate an issue finally decided on the merits, absent special circumstances not present here, if three conditions are met:

(1) the issue under consideration is identical in both actions; (2) the issue was fully and vigorously litigated in the prior action; and (3) the issue was necessary to the prior judgment. *United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994); *accord In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994).

The *ION* decision conclusively establishes each of these factors. Though the specific locations of the accused surveys within the EEZ were different in the *ION* case, the issues are the same: whether the U.S. EEZ, is U.S. territory, and whether marine surveys conducted in the EEZ can constitute direct infringement 'within the United States' for the purposes of U.S. Patent law. *ION*, 776 F. Supp. 2d at 368. In the *ION* decision, WesternGeco fully and vigorously litigated these issues. *Id.* at 346 (the Court decided the issues "[u]pon considering the Motions, all responses thereto, and the applicable law"). The Court issued a 32-page opinion addressing them. *Id.* at 342-374. Furthermore, resolving these issues was necessary for rendering the *ION* decision, which held that marine surveying in the EEZ occurred "outside the territory of the United States and [is] thus not actionable under 35 U.S.C. § 271(a),"[6] necessitating dismissal of WesternGeco's claims of direct infringement under § 271(a) based upon the Fugro Defendants' acts that occurred in the EEZ. *Id.* at 371. For the additional reason that WesternGeco is issue-precluded from contesting that marine surveys conducted in the EEZ do not occur "within the United States" for the

---

[6] The Court also concluded that the location of the survey on the Outer Continental Shelf ("OCS") did not subject the marine surveys to U.S. patent laws. Because location in the EEZ and location over the OCS were considered alternative, independent bases for imposing U.S. patent laws on marine surveys, the decision that neither argument prevailed was necessary to the decision.

- 16 -

purposes of U.S. patent law, WesternGeco's infringement claims based on marine surveys conducted in the EEZ must be dismissed.

> **b.** **WesternGeco's Infringement Claims Under § 271(g) Should Be Dismissed For Each of the Streamer Positioning Patents**

WesternGeco conditionally alleges that PGS infringes the Streamer Positioning Patents under § 271(g), but these claims fail as a matter of law. Under § 271(g), "whoever without authority imports into the United States or offers to sell, sells, or uses within the United States *a product which is made by a process patented in the United States* shall be liable as an infringer." 35 U.S.C. § 271(g) (emphasis added). Patents that do not include method claims (i.e. processes) cannot be infringed under § 271(g).

> **i)** **PGS Cannot Infringe The '223 Patent Under § 271(g) Because The '223 Patent Contains No Method Claims**

The '223 Patent does not have *any* method claims and PGS therefore cannot infringe the '223 Patent under § 271(g) as a matter of law. Where liability under § 271(g) requires domestic importation, sale, or use of "a product which is made by a *process* patented in the United States," it is impossible to infringe a patent under § 271(g) if that patent claims no processes or methods. 35 U.S.C. § 271(g) (emphasis added). Hence, WesternGeco's allegation that PGS infringes the '223 Patent under § 271(g) should be dismissed.

ii)    **The Overlapping Patents And The '552 Patent Are Directed To Streamer Positioning, Not Manufacture Of A Physical Product**

Though WesternGeco's Overlapping Patents and the '552 Patent contain method claims, these methods are not directed to manufacturing *anything*, and therefore cannot be infringed under § 271(g).  Liability under § 271(g) requires importation of a physical article manufactured by the claimed method.  *NTP*, 418 F.3d at 1323 (holding that "[b]ecause the transmission of information, like the production of information, does not entail the manufacturing of a physical product, § 271(g) does not apply"); *Bayer AG v. Housey Pharm., Inc.*, 340 F.3d 1367, 1377 (Fed. Cir. 2003) (holding that § 271(g) does not apply to a method for characterizing substances as inhibitors or activators of proteins)).

The method claims in WesternGeco's Streamer Positioning Patents are nothing more than approaches for managing the transient placement of streamers being towed behind a vessel.  The claims do not themselves result in the manufacture of anything, let alone a product.  Moreover, practicing the claims does not even result in recording reflected signals.  For example, an independent method claim of the '607 Patent describes a method comprising:

> (a) towing an a [sic] array of streamers each having a plurality of streamer positioning devices there along;
> (b) predicting positions of at least some of the streamer positioning devices;
> (c) using the predicted positions to calculate desired changes in position of one or more of the streamer positioning devices; and
> (d) implementing at least some of the desired changes.

'607 Patent, D.I. 15 Ex. G at Claim 1.  In essence, the patent involves predicting the "positions of at least some of the streamer positioning devices," and based on those

predictions, calculating desired changes in the position of those devices and implementing them. '607 Patent, D.I. 15 Ex. G at Claim 1. No product is manufactured by the method.

The same is true of the related '967 Patent, whose only independent method claim recites:

> (a) towing an array of streamers each having a plurality of streamer positioning devices there along, at least one of the streamer positioning devices having a wing;
> (b) transmitting from a global control system location information to at least one local control system on the at least one streamer positioning devices having a wing; and
> (c) adjusting the wing using the local control system.

'967 Patent, D.I. 15 Ex. H at Claim 1. This method calls for "transmitting … location information to at least one local control system" on the SPD, and adjusting the SPD's wing in accordance with that information. Again, the act of "transmitting" location information is not tantamount to manufacture of any product. *See NTP*, 418 F.3d at 1323 (Fed. Cir. 2005) (holding that "[b]ecause the transmission of information . . . does not entail" the manufacturing of a …product, [§] 271(g) does not apply). As with the '607 Patent claims, the end result of practicing the '967 method are transient wing adjustments on one or more SPDs.

This is also true of the '520 Patent's methods, which claim:

> (a) towing an array of streamers each having a plurality of ***streamer positioning devices*** there along contributing to steering the streamers;
> (b) controlling the ***streamer positioning devices*** with a control system configured to operate in one or more ***control modes*** selected from a feather angle mode, a turn control mode, and a streamer separation mode.

'520 Patent, D.I. 15 Ex. F at Claim 1.  These claims describe little more than the use of various control modes to reposition towed streamers via SPDs.  Practicing this method may result in reconfigured streamers in a towed streamer array but does not result in manufacturing anything, or even recording information.

The '552 Patent fares no better.  It claims methods comprising:

> independently and separately adjusting the angular position of each of two control surfaces on a control device to achieve a desired depth of the control device, wherein the control device is attached to the seismic streamer.

'552 Patent, D.I. 15 Ex. E at Claim 1.  As with the Streamer Positioning Patents, these claims describe an adjustment of the vertical or horizontal position of a control device attached to a towed seismic streamer.  *Id.* at Claims 1, 9.  No product is ever manufactured through the claimed method, and therefore, infringement of this patent under § 271(g) is impossible.

### c. WesternGeco's Allegations That PGS Infringes The '552 and '944 Patents Under § 271(f) Fail As A Matter Of Law.

The '552 and '944 Patents contain only method claims, and WesternGeco has accused PGS of infringing both of these patents under § 271(f).  D.I. 15 at ¶ 60.  But PGS cannot possibly infringe either the '552 or '944 Patents under § 271(f) as a matter of law because this provision does not cover method claims.  *See, e.g.*, *Cardiac Pacemakers, Inc.* 576 F.3d at 1365.  Hence, WesternGeco's allegations that PGS infringes these patents under § 271(f) should be dismissed.

### 8. CONCLUSION

Based on both settled law and collateral estoppel resulting from previous rulings from this District, PGS respectfully asks the Court to dismiss WesternGeco's

(i) direct infringement allegations to the extent they are based on survey activity in the EEZ (D.I. 15 at ¶¶ 36-37, 44-45, 52-53, 60-61, 68-69, 76-77, 84-85) (ii) conditional § 271(g) allegations under the Streamer Positioning Patents, (D.I. 15 at ¶¶ 54, 62, 70, 78, 86), and (iii) § 271(f) allegations with respect to the '552 and '944 Patents.  (D.I. 15 at ¶¶ 44, 60).

Dated:  March 23, 2015

By:   _/s/ David Beck_____
    David Beck
    State Bar No. 00000070
    Federal Bar No. 919
BECK REDDEN LLP
1221 McKinney Street, Suite 4500
Houston, TX 77010-2020
Telephone:  713-951-3700
Facsimile:  713-951-3720
dbeck@beckredden.com

*Attorneys for Defendant*
*Petroleum Geo-Services, Inc.*

*Of Counsel:*

Benjamin Hattenbach
Ellisen Turner
Arka Chatterjee
Dominik Slusarczyk
IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067
Tel.: 310-277-1010
Fax: 310-203-7199

    Michael E. Richardson
        State Bar No. 24002838
        Federal Bar No. 23630
        mrichardson@beckredden.com
BECK REDDEN LLP
1221 McKinney
Suite 4500
Houston, TX 77010
Tel.: 713-951-3700
Fax: 713-951-3720

# CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing instrument to be served on the following counsel of record in accordance with Federal Rules of Civil Procedure on March 23, 2015:

| | |
|---|---|
| Lee L. Kaplan, Esq. | Timothy K. Gilman, Esq. |
| Attorney in Charge | KIRKLAND & ELLIS L.L.P. |
| SMYSER KAPLAN & VESELKA, L.L.P | Citigroup Center |
| 700 Louisiana, Suite 2300 | 153 East 53rd Street |
| Houston, TX 77002 | New York, NY 10022-4675 |
| Tel.: 713-221-2323 | Tel.: 212-446-4689 |
| Fax: 713-221-2320 | Fax: 212-446-4900 |
| E-mail: lkaplan@skv.com | E-mail: tgilman@kirkland.com |

ATTORNEYS FOR PLAINTIFF
WESTERNGECO L.L.C.

*/s/ Arka Chatterjee*
Arka Chatterjee